1  James F. Clapp, Esq., SBN 145814
   DOSTART CLAPP GORDON & COVENEY
2  4370 La Jolla Village Drive, Suite 970
   San Diego, CA 92122
3  Telephone:    (858) 623-4200
   Facsimile:    (858) 623-4299
4  jclapp@sdlaw.com

5  Kevin J. McInerney, Esq., SBN 46941
   Kelly McInerney, Esq., SBN 200017
6  Charles A. Jones, Esq., SBN 224915
   McINERNEY & JONES
7  18124 Wedge Parkway #503
   Reno, NV 89511
8  Telephone:    (775) 849-3811
   Facsimile:    (775) 849-3866
9  kevin@mcinerneylaw.net
   kelly@mcinerneylaw.net
10 caj@mcinerneylaw.net

11 *Attorneys for Plaintiffs*

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14

15 | **LINDA YOUNG, MIKE SAFAIE,** and | Case No. C 07:2828 CW |
   | **JANICE KEVARI,** individually and on behalf | |
16 | of all others similarly situated, | **PLAINTIFFS' MEMORANDUM OF** |
   | | **POINTS AND AUTHORITIES IN** |
17 | Plaintiffs, | **SUPPORT OF UNOPPOSED MOTION** |
   | | **FOR PRELIMINARY APPROVAL OF** |
18 | v. | **CLASS ACTION SETTLEMENT** |
19 | **CHARLES SCHWAB & CO., INC.** | |
   | | Date:  March 13, 2008 |
20 | Defendant. | Time:  2:00 p.m. |
   | | Judge: Hon. Claudia Wilken |
21

22

23

24

25

26

27

28
                                      1

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

I.  **INTRODUCTION.**

3

4

        In this unopposed motion, plaintiffs and proposed class representatives Linda Young,

5

Mike Safaie, and Janice Kevari ("plaintiffs") seek preliminary approval of a $2,150,000 class-

6

wide settlement reached on behalf of a class of approximately 600 current and former employees

7

of defendant Charles Schwab & Co., Inc. ("Schwab"). By stipulation, a Second Amended

8

Complaint is lodged concurrently with this motion with a request for an order of its filing.

9

Plaintiffs primarily allege that Schwab initially misclassified its Branch Client Service Specialists

10

("CSSs"), as "exempt" employees, and then, following a 2005 reclassification, failed to pay them

11

for all hours worked, thereby denying them overtime pay in violation of federal and state law.

12

Schwab has always contended that its employees were always properly classified and

13

compensated.

14

        As Branch Client Service Specialists, Plaintiffs supported Schwab's Financial Advisors

15

and assisted customers. Prior to October 2005, Schwab treated the CSSs as exempt but thereafter

16

treated them as hourly. On June 30, 2007, Schwab abolished the job title but a few individuals

17

continue to fulfill the same role. The proposed settlement covers only persons employed by

18

Schwab on or before June 30, 2007, although the release period runs through final approval.

19

20

        This action was filed on May 31, 2007, and a First Amended Complaint was filed on

21

August 3, 2007. This settlement is the product of a private mediation session with David Rotman

22

of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder held on November 12, 2007. While the

23

case did not actually settle then, counsel for the parties continued settlement talks and a number

24

of weeks later an agreement in principle was reached. The terms of the settlement are

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED          Case No.
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT             C 07:2828 CW

1    memorialized in the "Stipulation of Settlement" ("Stipulation"), attached hereto as Exhibit A,

2    although certain provisions, such as the allocation formula, are subject to review.[1]

3        Under Fed. R. Civ. P. 23(e), class actions may be settled only with court approval. The

4    approval process consists of two steps. In this first step, the Court makes a preliminary

5    evaluation of fairness of the settlement. *Manual for Complex Litigation, Fourth*, section 21.632

6    (2004). If the proposed settlement falls "within the range of possible approval," the Court should

7    grant preliminary approval and authorize the parties to give notice of the proposed settlement to

8    the class members. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

9        As discussed below and in the accompanying Declaration of Kevin J. McInerney, the

10   proposed settlement falls well within the "range of possible approval," particularly in light of the

11   substantial risks and costs associated with further litigation. Furthermore, the settlement is

12   entitled to a presumption of fairness, since it was reached through arm's-length bargaining

13   between experienced counsel, after a thorough exchange of discovery.

14

15       Accordingly, plaintiffs respectfully request that the Court: (1) preliminarily approve the

16   proposed settlement, (2) conditionally certify the class described herein for settlement purposes,

17   (3) authorize the mailing of a class notice to the class members, and (4) schedule a final approval

18   hearing. The parties will submit a proposed order and revised form of notice after they have

19   reviewed Judge Legge's report..

20

21

22   **II.    FACTUAL BACKGROUND.**

23       Young filed the instant lawsuit in the Northern District of California on May 31, 2007.

24   On August 3, 2007, a First Amended Complaint was filed, adding Safaie as a named plaintiff and

25

26   _____

27   [1] This Court has appointed retired Judge Charles Legge as a Rule 53 Master to review the parties' proposed
     allocation of the settlement proceeds. A hearing before Judge Legge is set for February 12, 2008.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED       Case No.
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT         C 07:2828 CW

1  proposed class representative and adding California state law claims. A Second Amended

2  Complaint, filed by stipulation concurrently with this motion for preliminary approval, seeks

3  relief on behalf of Schwab's Client Service Specialists, primarily for: (1) restitution of overtime

4  pay due to CSSs under the FLSA; (2) restitution of overtime pay due to CSSs under state laws;

5  and (3) recovery of penalties. The Settlement, if approved by the Court, would resolve all

6  pending federal and state wage and hour claims between the plaintiffs, the class, and Schwab.

7

8  **III.    SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT**

9

10  The proposed settlement provides for a total payout to those eligible class members who

11  participate of $2,125,000. There will be no residual. It is intended to cover some 600 employees

12  who worked as Client Service Specialists nationwide and relieve Schwab of all wage and hour

13  related claims under the FLSA and the laws of various states where Schwab had offices.

14  The Stipulation of Settlement calls for certification of the following class for settlement

15  purposes only: "Branch Client Service Specialist I and Branch Client Service Specialist II, and

16  also those individuals employed by Schwab on or before June 30, 2007 who have continued to

17  serve in that role (regardless of any change in actual job title) at any time between June 30, 2007

18  and the date of final approval." Stipulation, ¶15. The Class Period is co-extensive with the four-

19  year statute of limitations for recovery of wages under California's Unfair Competition Law.

20  *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000) and co-extensive

21  with the statute of limitations for wage and hour recovery under the laws of all jurisdictions

22  where Schwab employed CSSs, (as detailed in Exhibit E to the Stipulation of Settlement) or the

23  FLSA, whichever is longer.

24  Under the terms of the Stipulation, each class member will receive a Notice of Class

25  Action Settlement in the form attached as Exhibit A to the Stipulation ("Class Notice"). The

26  parties will retain the professional claims administration firm of Rust Consulting, Inc. (the

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED          Case No.
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT              C 07:2828 CW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"Claims Administrator") to mail the Class Notice and perform other required claims administration services. The Class Notice will describe the litigation, the terms of the settlement, and each class member's options with regard to the proposed settlement. The Class Notices will be sent, via First Class mail, to the last-known address of each class member along with a Claim Form and Exclusion Form. Prior to mailing the Class Notices, the Claims Administrator will consult the United States Postal Service's National Change of Address database in an effort to update the class members' addresses. In addition, to the extent any Class Notice is returned to the Claims Administrator as undeliverable, the Claims Administrator will perform a skip trace and mail the Class Notice and other settlement documents to the new address.

As explained thoroughly in the Class Notice, individuals who do not wish to be part of the class may request exclusion. Those individuals who timely submit a request for exclusion will not receive a settlement payment, but also will not be subject to the release of claims. In addition, as explained in the Class Notice, class members also have an opportunity to object to the settlement in writing.

Upon the Effective Date of the Stipulation, all class members will be deemed to have released the following known and unknown claims arising during the Class Period: all claims for the failure to pay overtime, or damages for missed rest and meal periods, based on the alleged misclassification of CSSs and all claims for penalties or additional statutory damages which allegedly arise from those claims.

Class members who submit timely claim forms will receive payment based on the number of weeks they were employed as a CSS prior to October 2005 (Schwab reclassification). The parties will estimate, following an allocation hearing before (retired) Judge Legge scheduled for February 12, 2008, an amount in the proposed notice that, following deduction of the proposed attorney's fees, litigation costs, the class representative awards, and costs of administration (all subject to Court approval), will approximate the amount that will remain for distribution to each

member.  For employment after October 2005, class members will receive a lump sum regardless of how many weeks worked.

The Stipulation provides that plaintiffs' attorneys are entitled to request an award of attorney's fees of up to $537,250.  This amount represents 25% of the total benefit that the class has received as a result of the lawsuit.  Class Counsel also are entitled to request reimbursement of litigation costs of up to $50,000 in addition to the request for attorney's fees.  *Id.*  Also, plaintiffs' attorneys will request a Class Representative Award for Young, Safaie, and Kevari in the total amount of $45,000 to compensate them for the time they spent, and the risk they undertook, in bringing the litigation on behalf of the class.

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

There is a strong judicial policy favoring settlements, particularly in complex class actions.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial . . . . The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."  Id.

In class action cases, the district court must approve any settlement.  Fed. R. Civ. P. 23(e).  As explained in the *Manual for Complex Litigation, Third*, court approval of a class action settlement is a two-step process:

> "First, counsel submit the proposed terms of the settlement and the court makes a preliminary fairness evaluation . . . .  If the preliminary evaluation of the proposed settlement does not disclose ground to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of Plaintiffs or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. *Manual for Complex Litigation, Third*, § 30.41, pp. 236-37.

The "universal standard" in evaluating the fairness of a settlement under Fed. R. Civ. P. 23(e) is whether the settlement is "fundamentally fair, adequate and reasonable."  *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]he court's intrusion

1    upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit

2    must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the

3    product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

4    settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id.

5        As the Ninth Circuit aptly recognized, "the very essence of a settlement is compromise."

6    *Id.* at 624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and

7    expensive litigation that induce consensual settlements. The proposed settlement is not to be

8    judged against a hypothetical or speculative measure of what might have been achieved by the

9    negotiators." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998), *citing,*

10    *Officers for Justice*, 688 F.2d at 625.  Even if a proposed settlement amounts to a fraction of the

11    potential recovery, this does not mean that the settlement is necessarily inadequate. Linney, 151

12    F.3d at 1242.

13        Preliminary approval should be granted if the proposed settlement falls "within the range

14    of possible final approval." *Gautreaux*, 690 F.2d at 621 n.3; Conte & Newberg, *Newberg on*

15    *Class Actions*, § 11.25, at pp. 38-39 (4th ed. 2002).  Stated another way, preliminary approval is

16    "a determination that there is what might be termed 'probable cause' to submit the proposal to

17    class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive*

18    *Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

19        A proposed settlement is presumed to be fair when (1) it is reached through arm's-length

20    negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have

21    conducted sufficient discovery. *Manual for Complex Litigation, Third*, § 30.42, p.240; *Wal-Mart*

22    *Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Here, all of the factors giving

23    rise to a presumption of fairness exist. First, the proposed settlement was the product of arm's-

24    length, non-collusive negotiations, stipulated a well-respected independent mediator.  Second,

25
26
27
28

---

7

1

2

plaintiffs are represented by experienced counsel. Third, the parties exchanged a significant

amount of information, both formally and informally. McInerney Decl.

In evaluating the fairness of a settlement, the district court should weigh the following

factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of

further litigation; the risk of maintaining class action status throughout the trial; the amount

offered in settlement; the extent of discovery completed and the stage of the proceedings; the

experience and views of counsel; the presence of a governmental participant; and the reaction of

the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

(9th Cir. 1998). In addition, the district court should satisfy itself that the settlement is not the

product of collusion between the plaintiffs and the defendant. *Class Plaintiffs*, 955 F.2d. at 1290.

Here, except for the fact that there is no governmental participant, each factor weighs in favor of

approving the settlement.

### A.    The Strength of Plaintiffs' Case.

Although plaintiffs and their counsel believe strongly in the merits of their case, there is a

significant risk that they might not prevail, either in this Court, or alternatively in the Ninth

Circuit. This case involves novel theories and unsettled questions of law. Notably, there is not a

single reported case that holds that financial advisors are entitled to overtime pay under either

federal or state law. To the contrary, the DOL's November 27, 2006 opinion letter supports

Schwab's position that CSSs are exempt. Also, the District Court in *Wolfgang Hein v. PNC* (511

F.Supp.2d 563) found that the class representative broker was administratively exempt. More

recently, class certification has been denied in two stockbroker cases, *Bachrach v. Chase*

*Investment Services Corp.*, Civil No. 06-2785, Westlaw 2007WL3244186 (D.N.J., November 1,

2007); *Handler v. Oppenheimer& Co., Inc*, Los Angeles Superior Court Case No. BC343542

(October 9, 2007). As noted previously, the Ninth Circuit has recently indicated a willingness to

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED                     Case No.
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT              C 07:2828 CW

1    defer to the DOL's interpretation of the FLSA. *Miller v. Farmers Insurance Exchange*, 2007

2    U.S. App. LEXIS 7403 (9th Cir. Mar. 30, 2007). Although Schwab reclassified its CSSs in 2005,

3    this arguably presented an "off-the-clock" case, a genre that has its own certification problems.

4
                In summary, unlike a garden-variety securities class action, where the law is

5    relatively settled and the path to recovery has been paved by a prior SEC or criminal

6    investigation, here plaintiffs and their counsel are operating in largely uncharted territory. In light

7

8    of this uncertainty, the "strength of plaintiffs' case" factor weighs in favor of settlement.

9    **B.    The Risk, Expense, Complexity and Likely Duration of Further Litigation.**

10                This case involves nearly 600 class members and multiple causes of action for which

11   certification would have to be sought. Both the FLSA and the varying labor laws of many states

12
     were implicated. If this case had not settled, class certification, discovery, and trial preparation

13   would have been extremely time consuming and expensive.

14
                Because this case involves a novel application of the overtime laws to positions that have

15   historically been regarded as exempt, the risk, expense, and delay associated with litigating the

16

17   case through trial is substantial. Therefore, this factor weighs in favor of approving the

18   settlement.

19   **C.    The Amount Offered in Settlement.**

20                According to plaintiffs' damages calculations, the $2,150,000 monetary payment

21   represents approximately 25% of Schwab's realistic overall exposure on the overtime and

22   business expense claims. This risk assessment is reasonable given the novelty of the claims and

23   the uncertainties in the law discussed above.

24

25                The settlement in this case is a "total payout" as opposed to a "claims made settlement."

26   Thus, if not all eligible members submit claims, the settlement fund will be divided among those

27   that did, resulting in larger distributions to the latter.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED        Case No.
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          C 07:2828 CW

Furthermore, as far as the amount class members will receive on a per month basis, this settlement compares very favorably to the settlement reached in *Garett v. Morgan Stanley DW, Inc.*, Case No. 04-CV-1858 BEN (S.D. Cal.), which was brought on behalf of Morgan Stanley's California-based financial advisors who earned substantially more. The *Garett* case alleged similar claims as this case, and the class members received approximately $219 per month after deduction of attorney's fees, litigation expenses, and cost of claims administration. The per-month payment to CSSs in this case will likely exceed the amount that Morgan Stanley's financial advisors received, which is a notable achievement in light of the intervening November 27, 2006 DOL opinion letter. Accordingly, this factor weighs in favor of approval as well.

**D.    The Experience and Views of Counsel.**

Plaintiffs' attorneys are experienced in this area of law. James F. Clapp of Dostart Clapp Gordon & Coveney, LLP, has been appointed lead plaintiffs' counsel in more than 25 certified class actions alleging violations of federal and/or state wage and hour laws. Mr. Clapp has testified before the California State Assembly on proposed legislation concerning the deduction of business expenses from commission wages. Mr. Clapp graduated from Northwestern University School of Law and has been litigating complex employment and business lawsuits, with a special emphasis on wage and hour law class actions, in California for the last 17 years. This Court is familiar with Mr. Clapp's knowledge in this area from his work in *Bahramipour v. Citigroup*.

Kevin J. McInerney of McInerney & Jones is also very experienced. Mr. McInerney graduated from Yale Law School in 1967. He has tried over 300 cases and handled more than fifty appeals. Since 1988, his practice has been limited almost exclusively to class actions. For the past eight years, the majority of cases he has handled have been wage and hour class actions brought on behalf of employees. His firm has been involved in excess of fifty class actions in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED        Case No.
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT        C 07:2828 CW

state and federal courts where it has been alleged that the employees were improperly

misclassified as exempt from the protection of overtime laws.   McInerney Decl.

Both Mr. Clapp and Mr. McInerney support the settlement and believe that the settlement

is fair, reasonable, and in the best interests of the class.  This factor weighs in favor of preliminary

approval.

E.    The Reaction of the Class to the Settlement.

To date, no class member has expressed any opposition to the settlement.  However, class

members will have the opportunity to express any opposition during the notice period.

V.    CONCLUSION.

For all of the foregoing reasons, plaintiffs Young, Safaie, and Kevari respectfully request

that the Court (1) grant preliminary approval for the proposed class action settlement, (2) certify

the proposed settlement class for settlement purposes only, (3) authorize the mailing of the

proposed class action notice, and (4) schedule a final approval hearing approximately 120 days

after the Court enters its order granting preliminary approval. An agreed-upon proposed order

will be filed in advance of the hearing.

Dated: February 7, 2008                     Respectfully submitted,

                                            MCINERNEY & JONES

                                            By:  /s/ Kevin J. McInerney
                                                    Kevin J. McInerney, Esq.
                                                    *Attorneys for Plaintiff*

---

11