Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287

Special Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA YOUNG, MIKE SAFAIE, AND JANICE KEVARI, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARLES SCHWAB & CO. INC,<br><br>Defendant. | CASE NO. C 07:2828 CW<br><br>REPORT, FINDINGS AND RECOMMENDATIONS OF THE SPECIAL MASTER<br><br>JAMS Reference No. 1100053517 |

## JURISDICTION

The undersigned was appointed by the Honorable Claudia Wilken, United States District Judge, as a Special Master to review the proposed allocation of the settlement proceeds among the class members, and to file a written report with the District Court on the reasonableness and fairness of the plan of allocation.

More specifically, the order appointing the undersigned as Special Master was issued by the Court on January 3, 2008 and defines the jurisdiction of this Special Master: "to preliminarily review the proposed settlement allocation…and file a written report with this District Court..." The review of the proposed plan is for a determination of reasonableness and fairness. Order of January 3, 2008, ¶ 1 (A).

1

## HEARING

Pursuant to that jurisdiction, a hearing was held by the Special Master on February 12, 2008. The hearing was recorded by a court reporter. Present at the hearing were counsel for the plaintiffs' class and counsel for defendant Charles Schwab & Co., Inc. No other persons were present, in person or by telephone. Since the proposed class settlement has not yet been preliminarily approved by the District Court and no notice to the class has yet gone out, no class members appeared at the hearing.

The Special Master received and has reviewed the following:

(1) The stipulation and order for the hearing of the parties' motion for preliminary approval of the settlement and the appointment of the Special Master;

(2) The second amended complaint;

(3) The joint stipulation of settlement and release;

(4) The notice of pendency of class action and opportunity to opt in, proposed settlement, and hearing date for Court approval;

(5) The plaintiffs' brief re allocation of the settlement, which contains the proposed plan of allocation and the reasons and authorities in support;

(6) Extensive research on state laws done by plaintiffs' counsel, including a binder containing the cases and statutes in each relevant jurisdiction on the subject of overtime pay and benefits.

## CLAIMS AND APPLICABLE LAW

The allegations in this case raise the following claims, simplified here for purposes of discussion.

One is the alleged failure to pay plaintiffs overtime to which they are allegedly entitled. The law governing these claims comes from two sources. One is the federal Fair Labor Standards Act, which applies to all plaintiffs in this case. The other are the separate state statutes and cases applicable to those plaintiffs residing or working in individual states. The state overtime statutes are somewhat duplicative of the FLSA. But some states have no specific overtime statutes, and others have salary thresholds that are different from one another and from the FLSA. California is an exception to that pattern of state overtime law. California has its own distinct overtime statute, and a body of case law has developed in California under that statute.

California Labor Code Section 510 (a); Wage Order 4-2001, Sections 1 (A) and 3 (A); <u>Ramirez vs. Yosemite Water Company</u>, 20 Cal 4th 785 (1999); <u>Bell vs. Farmers Insurance Exchange</u>, 87 Cal App 4th 805 (2001). The standards defined by California law, in both its statutes and case law, create a more favorable climate for claimants than do the laws of other states. And California law is more favorable to plaintiffs than is the Fair Labor Standards Act, on such issues as the definition of an employee, the administrative exemption, the commissioned sales exemption, and the salary threshold. Regardless of who may be correct on the contested issues of California and federal law, the Special Master concludes that plaintiffs' opportunities for recovery under California's overtime law are greater than under the overtime laws of any other state and under the FLSA.

A second alleged claim (again generally stated for discussion purposes) is a related overtime claim. That is, a claim that after October of 2005, when Schwab changed the status of these employees from exempt to non-exempt and hence made them eligible for overtime pay, some employees still did not get full overtime compensation because they allegedly worked "off the clock". The term "off the clock" refers to overtime hours worked, but not recorded or reported to Schwab. Schwab denies that there was such "off the clock" work. Even plaintiffs recognize that these claims are hard to prove and pose a serious question as to whether they can be a class claim. In absence of some policy by Schwab regarding such work, which discovery has not disclosed, each plaintiff would have to prove that he / she did work "off the clock", that he / she has presented the claim to Schwab, that Schwab refused to pay, and that he / she has adequate records to support the time and amounts claimed. Since Schwab did pay overtime to this group of employees starting in October 2005, the number of them who did additional work "off the clock" cannot be expected to be large. For these reasons the Special Master finds and concludes that this type of claim would be very difficult to prove, may not be certifiable as a class, and should not receive much weight in the allocation of the proceeds.

A third group of claims (again stated generally for discussion purposes) was added to the complaint when Janice Kevari was joined as a plaintiff. Those are claims that defendant did not provide some employees with meal and rest breaks required by the California Labor Code, and that defendant failed to observe other California Labor Code sections regarding the timing and form of wage payments. In addition to violating the California Labor Code, such conduct is also alleged to be an improper business practice under the California Business and Professions Code Section 17200. As with the "off the clock" claims, these claims are difficult to prove. In the

absence of some over arching policy or procedures on these subjects by Schwab, which discovery has not disclosed, these claims have serious problems of evidence, individualized proof, and possible class certification. Notice was given to the State of California of the claims and as a part of the settlement, defendant will pay the state the penalties which would be required if the claims were proved.

## THE CLASS SETTLEMENT

It is not the jurisdiction of the Special Master to review the reasonableness and fairness of the settlement amount agreed upon between defendant and the plaintiffs' class. However, it is appropriate for the Special Master to note the methodology for arriving at that settlement, because it also pertains to the reasonableness and fairness of the method of allocation.

Defendant produced its records for the employees who are within the definition of the class. The Special Master has no reason to question the completeness or the accuracy of that information, because the class attorneys had motivation to examine the completeness and accuracy of the information from defendant. From those records, the "work weeks" of each of class members were calculated. The statutes of limitation in each state were defined. So the measure of the claims of the class members in each state was their work weeks within the applicable period of limitations of their state, or within the limitation of the FLSA, whichever was more generous.

The parties engaged in a mediation before a respected and experienced mediator, and then continued to negotiate separately. Within some weeks they reached a mutually acceptable sum to be paid by defendant to the class, $2,150,000.

The parties then turned to the issue of the allocation of that sum among the class members.

## METHODS OF ALLOCATION

With all of the variations in plaintiffs' claims and their degrees of possible success under the laws of each state, there is no single method of gradation among the plaintiffs' claims that provides any degree of certainty. Attempting to assess degrees of potential success in one state compared to all of the others contains too many variables for reasonable empirical rating. The exception is California, where the law is a quantum leap from other states, but a leap that is still difficult of accurate quantification.

4

A "per person" method of allocation among all of the class members, regardless of their states, might be used. But that method would not even attempt to apply law to the facts. The only law which is uniform among all class members is the Fair Labor Standards Act. But for several reasons, that Act does not present a high degree of potential success throughout the states. One must look to the laws of each state with their innumerable variations. And finally, such a per capita approach is likely to be opposed by claimants in states such as California where plaintiffs' rights appear to be much stronger. If the case is going to be settled and approved as reasonable, the allocation must have some basis that is rational, although not necessarily perfect, and must present some degree of attractiveness to the class members as a whole.

The Special Master recognizes that it is his responsibility to make an independent determination of the reasonableness and fairness of an allocation method. However, as is apparent from the above discussion of the numerous different claims, statutes and case law, no one over-arching method of allocation comes to the fore. Instead an allocation must involve some checks, balances and trade offs in attempting to weigh the variations in a manner that is at least reasonable if not perfect. In such a circumstance, it would be unwise for the Special Master not to give serious consideration to the proposals made by the attorney representatives of the plaintiffs' class. Those attorneys are experienced in the settlement of class actions, including overtime cases. They are familiar with the state law variations. And they achieved a settlement by negotiations against knowledgeable defense counsel.

## THE PROPOSED ALLOCATION FORMULA

Plaintiffs propose to allocate the settlement proceeds among the class members as follows:

The total dollar amount of distributions must be within the $2,150,000 agreed settlement amount, less certain deductions for attorneys' fees, litigation expenses, plaintiff enhancements, expenses, and payments to the State of California. Class members seeking to participate in the distribution must participate must submit a valid and timely consent to join the settlement and a claim form. No portion of the settlement amount will revert to defendant.

With respect to claims made for the time period prior to October 2005, those class members who worked in California will be given twice the amount as those class members who were employed in other states. This is in recognition of the generally accepted fact that California has labor laws that are considerably more protective of employees than other states.

This two-to-one ratio of allocation has been recommended to and has been approved by District Counts in numerous other cases. Plaintiffs' counsel estimates that class members in California will receive approximately $50 per work week, and class members outside of California will receive approximately $25 per work week. If the fees and costs are reduced, or if not all eligible class members submit claims, these amounts could increase.

With respect to claims for the period after October 2005, a fixed sum of $275,000 will be divided among claimants on a per capita basis, regardless of the states in which each worked or the number of work weeks. The payments for these claims are estimated to be approximately $500 per person.

Twenty five thousand dollars will be paid to the State of California in satisfaction of penalties for certain of the California law claims other than overtime. No other compensation will be paid to any class members with respect to those claims.

The proposed allocation system accomplishes some worthwhile objectives. First, all of the validly recognized claimants will get something. Second, it is not a one-size-fits-all approach which ignores the many differences among the states. Third, it attempts to mirror settlements which have been approved by District Courts in similar cases. Fourth, it recognizes the legal reality that because of California's more favorable statutes and case law, plaintiffs in California would undoubtedly recover more than plaintiffs in other states. Fifth, it recognizes the distinctions between the strength of claims under the FLSA versus those under state law. And finally, the proposal bows to the inevitable conclusion that attempting to work out an allocation that includes all variables of per person, per state, per type of claim, and per state law is simply not doable. While individual objectors may later point to factors that are particular to them and which may appear to be more favorable to others, those objections can be addressed after the class notice is sent out and responses are received.

The Special Master also assisted the parties with suggested changes to the language of the settlement agreement and the language of the proposed class notice, in order to eliminate some perceived ambiguities in the drafts of those documents.

## **FINDINGS AND RECOMMENDATIONS**

The Special Master makes the following findings; provided however, that the Special Master is making no findings as to the settlement as a whole, since that is not a matter in his jurisdiction, but only findings regarding the allocation formula:

6

1. The Special Master is duly appointed under an order of this Court to preliminarily review the reasonableness and fairness of the proposed formula for the allocation of the class settlement proceeds.
2. The proposed allocation defined above in the section "The Proposed Allocation Formula" is the independent determination of the Special Master, albeit based upon the proposals advanced by the class representatives. The formula was originated by competent counsel with extensive prior experience in wage and hour law and class actions.
3. Extensive analysis has been given by the Special Master to the Fair Labor Standards Act, and to the statutes and cases in each of the United States jurisdictions involved.
4. The discussions to define the allocation formula were conducted at arms length and in good faith in light of the available legal and factual information. The formula is not the result of any collusion.
5. The proposed allocation formula is fair and reasonable to the plaintiffs' class as a whole.

The Special Master recommends to the Court that:

1. The proposed allocation formula defined above in the section "The Proposed Allocation Formula" be found to be fair and reasonable.
2. The Court approve the proposed allocation formula.
3. The proposed allocation formula be made part of the settlement terms submitted to the class members.
4. That if there are objections by class members to the allocation formula, the hearing and proposed rulings on those objections be referred to the Special Master.

Respectfully submitted by Charles A. Legge, the Special Master appointed under the order of January 3, 2008.

Dated: February 22, 2008

_____
Hon. Charles A. Legge (Ret.)
Special Master

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Young, Linda, et al. vs. Charles Schwab & Co., Inc.
Reference No. 1100053517

I, Emma Butler, not a party to the within action, hereby declare that on February 22, 2008 I served the attached Report, Findings And Recommendations Of The Special Master on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, via U.S. Mail, at San Francisco, CALIFORNIA, addressed as follows:

Kevin J. McInerney Esq.
McInerney & Jones
18124 Wedge Pkwy.
Suite 503
Reno, NV 89511  USA

Kelly McInerney Esq.
McInerney & Jones
18124 Wedge Pkwy.
Suite 503
Reno, NV 89511  USA

James F. Clapp Esq.
Dostart Clapp Gordon & Coveney
4370 La Jolla Village Dr.
Suite 970
San Diego, CA 92122

Diana Tabacopoulos Esq.
Seyfarth Shaw LLP
One Century Plaza, Suite 3300
2029 Century Park East
Los Angeles, CA 90067-3063  USA

Charles A Jones Esq.
McInerney & Jones
18124 Wedge Pkwy.
Suite 503
Reno, NV 89511  USA

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on February 22, 2008.

*Emma Butler* (signature)
Emma Butler