James F. Clapp, Esq., SBN 145814
DOSTART CLAPP GORDON & COVENEY
4370 La Jolla Village Drive, Suite 970
San Diego, CA 92122
Telephone:    (858) 623-4200
Facsimile:    (858) 623-4299
jclapp@sdlaw.com

Kevin J. McInerney, Esq., SBN 46941
Charles A. Jones, Esq., SBN 224915
MCINERNEY & JONES
18124 Wedge Parkway #503
Reno, NV 89511
Telephone:    (775) 849-3811
Facsimile:    (775) 849-3866
kevin@mcinerneylaw.net
kelly@mcinerneylaw.net
caj@mcinerneylaw.net

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LINDA YOUNG, MIKE SAFAIE,** and **JANICE KEVARI,** individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **CHARLES SCHWAB & CO., INC.** <br><br> Defendant. | Case No. C 07:2828 CW <br><br> **CLASS COUNSEL'S APPLICATION FOR ATTORNEY'S FFES, LITIGATION COSTS, AND CLASS REPRESENTATIVE ENHANCEMENTS** <br><br> Date:    August 21, 2008 <br> Time:   2:00 p.m. <br> Place:  Courtroom 2 <br> Judge:  Hon. Claudia Wilken |

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Introduction………………………………………….. | 2 |
| II. | The Court Should Award the Requested Fees……. | 2 |
| | 1. The Results Achieved………………………….. | 5 |
| | 2. The Risks of Litigation………………………… | 6 |
| | 3. The Skill Required and the Quality of the Work……………………………………. | 6 |
| | 4. The Contingent Nature of the Fee…………….. | 7 |
| | 5. Awards Made in Similar Cases……………..… | 7 |
| III. | The Court Should Approve the Requested Costs… | 7 |
| IV. | The Court Should Award the Requested Enhancements………………………………….. | 8 |

# I.
# INTRODUCTION

Under the Settlement terms, Class Counsel may request fees up to $537,500 (or 25%) of the $2,125,000 the defendant will pay, plus litigation costs not to exceed $50,000. In addition, Class Counsel are entitled to request enhancement payments to the named plaintiffs of $15,000 each. The class notice so informed the members. No objections to these requests have been made. Class Counsel now request this Court to approve an award of fees in the amount of $537,500 and costs of $18,544.38. Class Counsel additionally request enhancement payments of $15,000 to each of the three named plaintiffs.

# II.
# THE COURT SHOULD AWARD THE REQUESTED FEES

The Supreme Court has consistently recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970). The common fund doctrine is a well-recognized exception to the general American rule that a litigant must bear its own attorney's fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257-58 (1975). The Ninth Circuit has held that the common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefiting. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These criteria are "easily met" when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf.'" *Id.* at 271, citing *Van Gemert, supra*, 444 U.S. at 479.

Under the three factors set forth in *Paul, Johnson*, the common fund doctrine applies in this case. <u>First</u>, the class of beneficiaries is identifiable. Here, the parties have identified each of the class members by reviewing Schwab's employment records. <u>Second</u>, the benefits are easily traceable. The benefits consist entirely of monetary payments directly to the class members. Furthermore, each class member has an "undisputed and mathematically ascertainable claim" to a

share of the settlement based on the number of months he or she was employed as a Client Service Specialist during the class period. <u>Third</u>, the fee can be shifted with exactitude, since Class Counsel are claiming a specific, lump-sum percentage of the total settlement amount.

Under the common fund doctrine, courts typically award attorney's fees based on a percentage of the total settlement. As the Ninth Circuit wrote in *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990),"[a]lthough statutory awards of attorneys fees are subject to 'lodestar' calculation procedures, a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery." *Id.* at 1311. Every Supreme Court case that has considered the award of attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery. *See Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) *citing Blum v. Stenson* 465 U.S. 886, 900 n.16 (1984) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Trustees v. Greenough*, 105 U.S. 527, 532 (1881).

In the Ninth Circuit, district courts have the discretion to use either the percentage of the fund or the lodestar method to calculate attorney's fees. *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Nevertheless, the Ninth Circuit has also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases . . . ." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In Re Pacific Enterprises Securities Litigation,* 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33 1/3 % of the recovery; *Morris v. Lifescan, Inc.,* 54 Fed. Appx. 663 (9th Cir. 2003) (affirming fee award of 33% of the recovery). District courts in California have held that the percentage of the fund method is far preferable to the lodestar method because: (1) it aligns the interests of Class Counsel and the class; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In Re Oracle Securities Litigation*, 131 F.R.D. 688, 689 (N.D. Cal. 1990) (Walker, J.) (noting that the lodestar method has been "thoroughly discredited by experience"); *In Re Activision Securities Litigation*, 723 F.Supp. 1373, 1378-79 (N.D. Cal. 1989) (Patel, J.). In

criticizing the lodestar method, Judge Patel forcefully wrote:

> "The question this court is compelled to ask is, 'Is this process necessary?' Under a cost-benefit analysis, the answer would be a resounding, 'No!' Not only do the *Lindy* and *Kerr-Johnson* analyses consume an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fee petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach there is little incentive to arrive at an early settlement." *Id.*

Historically, attorney's fee awards have ranged from 20% to 50% of the total settlement, depending on the circumstances of the case. *Newberg on Class Actions*, (4th Ed. 2002) section 14.6, p. 550. However, the Ninth Circuit has established a "benchmark" fee of 25% in common fund cases. *Six Mexican Workers, supra*, 904 F.2d at 1311; *Williams, supra*, 129 F.3d at 1027; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage of recovery is based on the potential amount available to be claimed by the class, not the actual amount claimed. *Van Gemert, supra*, 444 U.S. at 477-82; *Williams* at 1027.

Under Ninth Circuit precedent, the district court has the discretion to adjust the 25% benchmark upward or downward, but such an adjustment is warranted only in "unusual circumstances." As the Ninth Circuit explained in *Paul, Johnson*, 886 F.2d at 272:

> "The sole remaining issue is what percentage of the common fund would provide [plaintiffs' attorneys] reasonable compensation. . . . We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent. [Citation.] That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case. If such an adjustment is warranted, however, we caution that it must be made clear by the district court how it arrives at the figure ultimately awarded."
> *Id.*

In this case, there are no "unusual circumstances" that warrant a downward departure from the benchmark 25% fee. First, although a settlement in principle was reached in November of 2007, Class Counsel should not be penalized for obtaining a relatively early settlement. "Indeed, one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, ensuring that competent counsel continue to be willing to undertake

risky, complex, and novel litigation." *Manual for Complex Litigation (Third)*, § 24.121, p. 191. Second, this is not a case where a substantial settlement and a recovery of a large attorney's fee was a foregone conclusion. *C.f. In re Quantum Health Resources, Inc. Securities Litigation*, 962 F.Supp. 1254, 1258 (C.D. Cal. 1997) (in a securities class action, the district court declined to award a 25% fee after analyzing the empirical evidence regarding securities settlements and finding that "there is no inherent risk of attorneys fee non-recovery in securities class action suits"). To the contrary, this was the first lawsuit ever filed alleging that broker assistants are entitled to overtime pay under the FLSA. Third, the $2.125 million settlement, while substantial, does not rise to the level of a "mega fund," which might warrant a reduction in the 25% benchmark fee. *See In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 383 (D.D.C. 2002) (mega funds are $100 million or more).

Moreover, the proposed fee is justified under the factors discussed in *Vizcaino v. Microsoft, Inc.* 290 F.3d 1043, 1048-50 (9th Cir. 2002). In that case, the court identified five factors that were relevant in determining whether the proposed 28% fee was reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Id.*, 290 F.3d at 1048-50. Applying the *Vizcaino* analysis to this case, the requested 25% fee is reasonable.

1. The Results Achieved.

The most important factor to be considered in ruling on a fee motion is the degree of success obtained by class counsel. *In Re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13627 at *27 (C.D. Cal. June 10, 2005). In this case, plaintiffs' attorneys have negotiated a settlement that equates to approximately one-third of Schwab's realistic exposure, which is an enormous recovery as compared, for example, to the typical securities class action, in which the average recovery is approximately 3% of the defendant's exposure. *See In Re Omnivision Technologies, Inc.*, 2007 U.S. Dist. LEXIS 95615 at *34 (N.D. Cal. Dec. 6, 2007) *citing Heritage Bond, supra*, at *27-28. Furthermore, as discussed in the McInerney Declaration at Paragraph 22, the Settlement compares favorably to other recent settlement reached on behalf of stockbrokers.

### 2. The Risks of Litigation.

Lawsuits involving stockbrokers were extremely risky for plaintiffs' counsel. This case is the first class action filed anywhere in the United States seeking overtime pay on behalf of broker assistants. Throughout this litigation, plaintiffs' attorneys have been operating in completely uncharted territory.

As discussed at length in the motion for final approval, there is not a single reported case that holds that broker assistants are entitled to overtime pay under federal or state law. The fact that plaintiffs' attorneys were able to negotiate a substantial settlement in this legal environment is a notable achievement.

### 3. The Skill Required and the Quality of the Work.

"The prosecution and management of a complex national class action requires unique legal skills and abilities." *Heritage Bond, supra*, 2005 U.S. Dist. LEXIS, 13627 at *39. Managing and then settling these lawsuits required a detailed analysis of the overtime and wage deduction laws of more than twenty separate jurisdictions, including a painstaking review of all relevant statutes, administrative regulations, opinion letters, and case law. There is no treatise or other secondary authority that reliably explains these laws; the single treatise that exists contains many, many errors. It took considerable skill and diligence for Class Counsel to compile and consolidate these state laws into a manageable format, evaluate the likelihood of success of each state law claim, present the merits of each claim to defense counsel and later to Judge Legge, and then to formulate and defend a rational proposal for distributing the settlement proceeds among those various jurisdictions.

The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel. *In Re Equity Funding Corp. Sec. Litig.*, 438 F.Supp. 1303, 1337 (C.D. Cal. 1977) (recognizing that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.") In this case, Schwab was represented by a prominent law firm with extensive experience in wage and hour class actions. The ability of Class Counsel to obtain such a favorable settlement in the face of this opposition reflects the superior quality of Class Counsel's work.

4.     The Contingent Nature of the Fee.

The Ninth Circuit has observed: "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . . as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *Washington Public, supra*, 19 F.3d at 1299-1300. Plaintiffs' counsel have received no compensation for their efforts during the course of the litigation.

5.     Awards Made in Similar Cases.

While the Ninth Circuit has established a benchmark fee of 25% of the common fund, both the Ninth Circuit and district courts routinely approve higher awards in complex class actions. *See, e.g. In Re Pacific Enterprises, supra*, 47 F.3d at 378-79 (affirming 33 1/3% fee); *Vizcaino, supra*, 290 F.3d at 1048-50 (affirming 28% fee); *Morris v. Lifescan, Inc., supra*, 54 Fed. Appx. 663 (affirming 33% fee). Furthermore, to the best of Class Counsel's knowledge, in the handful of stockbroker wage and hour cases that have been granted final approval in this District, the fee award has been 25% of the common fund. (*See, e.g., Burns v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, N.D. Cal. Case No. 04-4135, Docket No. 43 (25%); *Bowman v. UBS Financial Services, Inc.*, N.D. Cal. Case No. 04-3525, Docket No. 144, para. 13 (25%); *Glass v. UBS Financial Services, Inc.*, N.D. Cal. Case No. 06-4068, Docket No. 230, page 26:12-13 (25%); the one exception has been *Bahramipour v. Citigroup Global Markets, Inc.*, where counsel received fees of 23%). Thus, the 25% fee is justified by awards in similar cases.

### III.

### THE COURT SHOULD APPROVE THE REQUESTED COSTS

As discussed in the declarations of the plaintiffs' attorneys, filed herewith, the plaintiffs' firms have incurred a total of $27,170.16 in litigation expenses ($18,544.38 by McInerney & Jones and $8,625.78 by Dostart Clapp Gordon & Coveney LLP). Class Counsel request that the Court approve this requested amount.

IV.

## THE COURT SHOULD AWARD THE REQUESTED ENHANCEMENTS

Finally, Class Counsel request that the Court award the named plaintiffs $15,000 each for their services as class representatives. Such service payments serve an important function in class actions by rewarding the individuals who have had the initiative and the diligence to prosecute a lawsuit on behalf of a large group of people. In *League of Martin v. City of Milwaukee*, 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff individual relief. It is "not uncommon for class members . . . to receive special treatment in settlement," especially when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024. Similarly, in *Lo Re v. Chase Manhattan Corp.*, 1979 U.S. Dist. LEXIS 12210 at *16-17 (S.D.N.Y. May 23, 1979), the court approved payment of $229,000 out of a $1,579,000 settlement fund to the named plaintiffs, which represented the full value of their individual claims. One of the factors considered by the court in determining that such payments were fair was the fact that plaintiffs' efforts conferred a benefit on a substantial number of people.

As discussed in the declarations of plaintiffs' attorneys, filed herewith, the named plaintiffs provided invaluable assistance to Class Counsel by explaining the defendant's compensation policies, locating witnesses, reviewing documents, and participating in the settlement negotiations. Their efforts in prosecuting the litigation have conferred a substantial benefit on more than 800 class members. Furthermore, the named plaintiffs willingly accepted the risk that they might be held personally liable for costs if Schwab had prevailed. *See Koehl v. Verio*, 142 Cal.App.4th 1313, 1328 (2006) (in wage and hour class action where defendant prevailed at trial, the named plaintiffs were held liable, jointly and severally, for the defendant's attorney's fees). Finally, as noted in the accompanying declarations, these plaintiffs could have chosen to pursue their wage claims on an individual basis. By becoming a fiduciary to the class they subordinated their own potential recoveries for the benefit of many employees. The requested enhancements are in line with the enhancements awarded to the named plaintiffs in the other stockbroker cases that have settled in this District: *Burns v. Merrill Lynch, Pierce Fenner*

*& Smith, Inc.*, N.D. Cal. Case No. 04-4135, Docket No. 44, para. 12 ($25,000 to the named plaintiff); *Bowman v. UBS Financial Services*, N.D. Cal. Case No. 04-3525, Docket No. 144, para. 13 ($20,000 to the named plaintiffs); *Glass v. UBS Financial Services*, N.D. Cal. Case No. 06-4068, Docket No. 230, page 27:15-16 ($25,000 to the named plaintiffs).

Dated: July 17, 2008

Respectfully submitted,

MCINERNEY & JONES

By: /s/ Kevin J. McInerney
Kevin J. McInerney
Attorneys for Plaintiffs